UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY OF NORTH LAS VEGAS,<br><br>        Plaintiff,<br><br>v.<br><br>CLARK COUNTY, NEVADA; UNITED STATES OF AMERICA, acting by and through the Secretary of the Air Force; and MICHAEL B. DONLEY, Secretary of the Air Force,<br><br>        Defendants. | 2:11-CV-00944-PMP-PAL<br><br><u>ORDER</u> |

        This matter is before the Court on jurisdictional briefing the Court ordered at the June 20, 2011 hearing. (Mins. of Proceedings (Doc. #18).) Plaintiff City of North Las Vegas ("City") filed a Memorandum of Points and Authorities in Support of Subject Matter Jurisdiction (Doc. #30) on June 23, 2011. Defendant Clark County, Nevada ("County") filed a Memorandum in Support of Suggestion of No Jurisdiction (Doc. #34) on June 29, 2011. City filed a Reply (Doc. #40) on July 8, 2011. Defendant United States of America filed a Responsive Memorandum Regarding Jurisdiction (Doc. #41) on July 12, 2011.

        Also before the Court is Plaintiff City's Request for Jurisdictional Discovery and Evidentiary Hearing (Doc. #54), filed on July 14, 2011. Defendant County filed an Opposition (Doc. #55) on July 19, 2011. Plaintiff City filed a Reply (Doc. #56) on July 29, 2011. Defendant United States filed an Opposition (Doc. #54) on August 1, 2011.

///

///

## I. BACKGROUND

This suit arises from a dispute between Plaintiff City, a municipal corporation in Nevada, and Defendant County, a political subdivision of the State of Nevada, over City's Water Reclamation Facility ("WRF"), which City recently constructed on property owned by Defendant United States of America. The City and the County dispute whether the City must obtain any further approval from the County to discharge treated wastewater ("effluent") from the WRF into the Range Wash, which ultimately flows into the Sloan Channel. The Range Wash is located on federal property at Nellis Air Force Base. (Mem. of P.O.A. in Support of Subject Matter Jurisdiction (Doc. #30) ["Mem. re: Jurisdiction"], Ex. F at 2; United States' Resp. to the City of N. Las Vegas' Request for Jurisdictional Disc. & Evid. Hrg. (Doc. #57), Ex. 1.) Water in the Range Wash flows into the Sloan Channel, which in turn flows into the Las Vegas Wash. (Mem. re: Jurisdiction, Ex. F at 2.) County owns, by fee or easement, Sloan Channel and the improvements thereon. (Mot. TRO (Doc. #8), Ex. A at 1.)

In 1984, the United States of America, through the Secretary of the Air Force, granted to County "an easement for a right-of-way for the construction, operation and maintenance of a flood control channel, known as the Sloan Channel and related facilities thereto, . . . over, across, in and upon land of the United States," at Nellis Air Force Base. (Exs. to Compl. (Doc. #23), Ex. F at 1.) The easement is subject to various conditions, including that the installation, operation, and maintenance of the channel is "under the general supervision and subject to the approval of" a designated Air Force official, and is "subject to such rules and regulations as the said officer may from time to time prescribe." (Id. at 2.) The United States also "reserve[d] to itself the right to construct, use and maintain across, over, and/or under the right of way hereby granted, electric transmission, telephone, telegraph, water, gas, gasoline, oil, and sewer lines, and other facilities, in such manner as not to create any unreasonable interference with the use of the right of way

herein granted." (Id.)  The United States also reserved the right to require County to remove or relocate the channel should the United States determine it needed the land or determine that the existence of the channel was detrimental to governmental activities.  (Id.)

In October 2008, City entered into an Enhanced Use Leasing Lease Agreement ("EUL") with the United States Department of the Air Force.  (Exs. To Compl. (Doc. #23), Ex. E.)  Pursuant to the EUL, the United States leased to City for a term of fifty years a section of property located on Nellis Air Force Base.  (Id. at 5.)  The purpose of the lease is "for construction and operation of a wastewater treatment facility and for all other related lawful municipal purposes."  (Id. at 10.)  The EUL leases property identified by Exhibit A to the EUL, "TOGETHER WITH the right to access to an area outside of the Project for [purposes] of constructing and maintaining a discharge line from the Facility to the discharge channel pursuant to the terms of the discharge easement as more specifically described in Exhibit A-1 (the 'Discharge Easement')."  (Id. at 5.)

Exhibit A-1 states that it is a "land description" which "describes a portion of assessor's parcel number 140-16-801-001 designated as a 'public drainage and utility easement,' generally located within Nellis Air Force Base, north of Carey Avenue and East of a projection of Christy Lane, Clark County, Nevada."  (Id., Ex. A-1.)  Exhibit A-1 then contains a land description and is followed by several schematics showing the subject area with a proposed 48" storm drain and proposed twin 48" effluent lines.  (Id.)  Each page of schematics is labeled "Water Reclamation Facility Public Drainage and Utility Easement." (Id.)  The final page of Exhibit A-1 depicts the "public drainage and utility easement" as extending into the middle of the Range Wash.  (Id.)

City broke ground on the WRF in November 2008.  (Mem. re: Jurisdiction, Ex. F at 1.)  In late 2010, staff of City and County prepared a proposed maintenance agreement for the Range Wash and Sloan Channel in relation to City's soon-to-be operational WRF. (Id., Ex. F at 4, Exs. G, I.)  County's Board of Commissioners held several meetings on the

issue but did not adopt the proposed inter-local maintenance agreement and did not approve an encroachment permit which County contends City must obtain to discharge effluent into the County's improvements on the Range Wash and in Sloan Channel. (Id., Ex. F at 4-7, Exs. G, I.)

Efforts at resolving the issue politically so far have been unsuccessful. (Mot. TRO, Exs. J, K; Mem. re: Jurisdiction, Exs. F, G, I.) On June 8, 2011, City sent County a letter putting County "on notice of [City's] intent to immediately begin discharging effluent from its WRF into the Sloan Channel . . . ." (Mot. TRO, Ex. K at 3.)

The very next day, the City began discharging effluent into the Range Wash. (Mem. re: Jurisdiction, Ex. F at 7.) That same day, City filed this action for declaratory relief in this Court. (Compl. (Doc. #1).) In the Complaint, City bases jurisdiction on 28 U.S.C. § 1346(f) "because this action involves a dispute over title to real property under 28 U.S.C. § 2409[a](a)."[1] (Id. at ¶ 8.) City alleges that the EUL granted City a discharge easement "allowing [City] to build and maintain a discharge line from the WRF to the Range Wash, which flows directly into the Sloan Channel." (Id. at ¶ 47.) City further alleges that the Department of Air Force "granted [City] a discharge easement . . . ." (Id. at ¶ 49.)

City seeks declaratory judgment "declaring and defining the rights, duties and obligations of the parties with respect to the Enhanced Use Lease and the competing easements granted to [City] and Clark County by the [Department of Air Force]." (Id. at ¶ 57.) City alleges the United States is "a necessary and indispensable party to this action because, as a party to the Enhanced Use Lease and the grantor of competing easements to

---

[1] The Complaint also cited 28 U.S.C. § 1346(a)(2) as a basis for federal question jurisdiction "because this is an action against the United States for an amount not exceeding $10,000." (Compl. at ¶ 7.) However, the Complaint asserts a claim only for declaratory relief. City does not now contend that § 1346(a)(2) provides a basis for jurisdiction in this Court.

4

[City] and Clark County, any determination of [City's] and Clark County's rights will necessarily affect the [Air Force's] rights in the property over which it granted the easements." (Id. at ¶ 59.) The City specifically requests a declaration that "pursuant to the Enhanced Use Lease and the related Discharge Easement, [City] is authorized to release effluent water from the WRF into Sloan Channel." (Id. at ¶ 61.) City also requests a declaration that "Clark County may not interfere with [City's] exercise of its right to release effluent water from the WRF into Sloan Channel." (Id. at ¶ 62.)

County thereafter counterclaimed, asserting state law claims for trespass, nuisance, and declaratory relief. (Ans. & Countercl. (Doc. #7).) In its Answer, County asserts that City named the United States as a party as "an artifice to suggest the existence of federal question jurisdiction." (Id. at ¶ 3.) County thereafter moved for a temporary restraining order to enjoin City from further discharging effluent into the Range Wash and Sloan Channel. (Mot. TRO (Doc. #8).) The Court set the matter for hearing, but prior to the hearing, County filed a Suggestion That Subject Matter Jurisdiction is Wanting (Doc. #13), in which County suggested that this Court lacked subject matter jurisdiction under the Quiet Title Act because no dispute over title exists as between City and the United States.

The Court held a hearing on County's motion for a temporary restraining order on June 20, 2011. (Mins. of Proceedings (Doc. #18).) At the time of the hearing, the United States had not been served, and it did not appear at the hearing. (Tr. (Doc. #29) at 5, 8, 14.) At the hearing, the Court expressed its doubt that subject matter jurisdiction existed under the Quiet Title Act. (Id. at 5, 8, 26.) The Court permitted County to withdraw its motion for temporary restraining order, and the Court ordered the parties to brief the jurisdictional question. (Id. at 29-32.) Following the hearing, the Court ordered City to serve the United States and directed the United States to file a responsive memorandum regarding its position on the Court's jurisdiction. (Order (Doc. #17).)

///

1    City now argues that this Court has jurisdiction under the Quiet Title Act, the
2 Property Clause of the United States Constitution, and the Clean Water Act.  As to the
3 Quiet Title Act, City argues that the dispute in this case involves competing easements the
4 United States granted to the County and the City.  City contends there is disputed title as
5 between the City and the United States because to obtain complete relief, City must name
6 both the easement holder and the owner of the servient tenement.  City contends jurisdiction
7 exists under the Property Clause because the United States entered into the EUL pursuant to
8 congressional acts enacted pursuant to the Property Clause, and the EUL grants City the
9 right to discharge effluent into the Range Wash without requiring any further permission
10 from County.  City contends this federal approval trumps any local permitting requirements
11 by County.  Finally, City argues this suit raises substantial questions of federal law under
12 the Clean Water Act because City contends that once County adopted areawide water
13 management plans pursuant to its authority under the Clean Water Act, those plans had the
14 force of law.  City contends any attempt by County to prohibit City's discharge of effluent
15 conflicts with the County's prior approval of the areawide water management plans which
16 contemplated effluent from the WRF would be discharged into the Range Wash and Sloan
17 Channel.
18    County contends subject matter jurisdiction is lacking in this Court.  As to the
19 Quiet Title Act, County contends there is no adversity between City and the United States,
20 or between County and the United States.  Rather, the only dispute is between County and
21 City, and that does not support jurisdiction under the Quiet Title Act.  County contends that
22 because neither City nor County seeks to quiet title between themselves and the United
23 States, the Quiet Title Act does not apply.  County argues the Property Clause also does not
24 confer jurisdiction because the United States has not preempted local law, as shown by the
25 EUL which requires City to comply with all applicable local laws.  Finally, County argues
26 the Clean Water Act does not provide jurisdiction because City cannot bring a claim under

that Act to get permission to make a discharge.

Defendant United States responds that, as to the United States, no jurisdiction exists. The United States argues that City has failed to identify any applicable waiver of sovereign immunity other than the Quiet Title Act. The United States argues that as to that statute, no jurisdiction exists because there is no dispute to title as between the United States and the City or County. In making its response, the United States makes several statements which suggest it is the United States' position that the EUL does not grant the City an easement at all, or, if it does, it does not grant an easement to discharge effluent into the Range Wash. For example, the United States argues that "[a]lthough the language in the EUL appears to evidence an intent to grant an easement, Exhibit A-1 appears to be a legal description, not an easement." (United States' Responsive Mem. Regarding Jurisdiction (Doc. #41) at 10.) Later, the United States contends that "[w]hile these charts and legal description [in Exhibit A-1] taken together with the language in the EUL may evidence an intent to grant an easement, without a separate agreement explaining its terms and conditions, Exhibit A-1 to the EUL appears to fall short of being an easement." (Id. at 26.) However, the United States concedes the EUL gives the City "the right to build and maintain a discharge line that crosses into the land covered by the County's easement." (Id.)

Despite making these statements, the United States contends that no dispute over title exists between City and the United States because the EUL is a contract, and thus does not give rise to a dispute over title to property. Further, the United States contends that to the extent City and the United States disagree about the existence or scope of an easement under the EUL, the Court may go beyond the pleadings to examine the EUL which, on its face, does not give City the right to discharge effluent. The United States takes no position as to whether jurisdiction exists as between City and County.

///

7

Based on the United States' filing, City filed a request for jurisdictional discovery and an evidentiary hearing. City argues that because United States is mounting a factual attack on subject matter jurisdiction, jurisdictional discovery is necessary, particularly regarding the City's and the United States' intent regarding easement rights under the EUL. Both the County and the United States oppose jurisdictional discovery, both arguing no discovery is necessary and would serve only to delay this matter.

## II. DISCUSSION

### A. Quiet Title Act

"The United States, as a sovereign, is immune from suit unless it has waived its immunity." Balser v. Dep't of Justice, Office of U.S. Tr., 327 F.3d 903, 907 (9th Cir. 2003). Sovereign immunity is a jurisdictional bar if the United States has not consented to be sued on a particular claim. Id. The United States must express unequivocally its waiver of sovereign immunity, and the terms of the waiver define the court's jurisdiction. Id. As the party asserting jurisdiction exists in this Court, a party bringing an action against the United States "'bears the burden of demonstrating an unequivocal waiver of immunity.'" Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1005 (9th Cir. 1998) (quoting Mitchell v. United States, 787 F.2d 466, 467 (9th Cir. 1986)).

The parties agree that the only jurisdictional basis Plaintiff City identifies which could constitute a waiver of sovereign immunity in this case is the Quiet Title Act. The Quiet Title Act waives the United States' sovereign immunity if a claim properly is brought within the Court's initial jurisdiction under the Act. Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009); Skranak v. Castenada, 425 F.3d 1213, 1216 (9th Cir. 2005).

Pursuant to the Quiet Title Act, the "United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). "[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the Quiet

8

Title Act: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property." Leisnoi, Inc. v. United States, 170 F.3d 1188, 1191 (9th Cir. 1999). "If either condition is absent, the Act in terms does not apply and the district court lacks jurisdiction to entertain the action." Id.

Under the first condition, the United States' claimed interest need not be adverse to any party in the action, so long as the United States claims some property interest. Id. at 1192. As to the second condition, "there must be a conflict in title between the United States and the plaintiff." Id. This requirement may be satisfied if a third party asserts the interest on the United States' behalf so long as that third party's assertion of the United States' interest clouds the plaintiff's title. Id. at 1192. However, a dispute between the plaintiff and "some third party claiming an interest for itself will not satisfy the requirement." Id.; see also Leisnoi, Inc. v. United States, 267 F.3d 1019, 1023 (9th Cir. 2001) ("As we held in Leisnoi I, two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: 1) the United States must claim an interest in the property at issue; and 2) there must be a disputed title to real property between interests of the plaintiff and the United States.").

A dispute over the existence or scope of an easement will satisfy the requirement that there be a dispute over title to real property. Robinson, 586 F.3d at 686 ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."); Leisnoi, 170 F.3d at 1191 ("It is well settled that an easement is an interest in real property."). Additionally, a dispute as to title exists when there is a "cloud upon the title of a plaintiff." Robinson, 586 F.3d at 687 (quotation omitted).

Here, there is no question the first condition is met. The United States claims to own the property at Nellis Air Force Base pursuant to which it granted an easement to County and entered into the EUL with City.

As to the second condition, an initial reading of the Complaint led this Court to question subject matter jurisdiction because no dispute over title was apparent as between Plaintiff City and the United States on the face of the Complaint. Rather, the dispute appeared to be between City and County. The Court expressed this doubt at the June 20 hearing, but requested the parties, including the United States, to brief the matter further.

The United States' response, however, confirms the Court has jurisdiction under the Quiet Title Act. City claims the EUL grants it an easement to discharge effluent into the Range Wash without any further approvals or permits from the County other than those already obtained. The United States suggests the EUL does not grant an easement at all, but even if it does, it does not grant an easement to discharge effluent. A dispute over the existence and scope of City's claimed easement therefore exists between Plaintiff City and the United States. The United States' position that no easement exists, or if one does, it does not have the scope the City claims, casts a cloud upon City's claimed title to an easement to discharge effluent into the Range Wash on Nellis Air Force Base.

The United States suggests the Court may construe the EUL and determine on its face that City does not have the property rights it claims. However, the question at this stage is not whether City will prevail, but whether it asserts a non-frivolous claim falling within the Court's initial jurisdiction under the Quiet Title Act. See Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc., 572 F.3d 771, 775 (9th Cir. 2009). The United States makes statements to the effect that the EUL and its exhibits evince an intent to create an easement, and the documents refer to a "discharge easement." City thus makes a non-frivolous assertion that the United States granted it an easement of some sort through the EUL, an assertion which the United States now disputes. Because adversity as to title in an interest in property exists as between Plaintiff City and Defendant United States, the Quiet Title Act waives the United States' sovereign immunity, and the Court will exercise jurisdiction in this matter with respect to the City's request for

declaratory judgment vis-a-vis the United States.

However, the Quiet Title Act does not provide original jurisdiction for City's request for declaratory relief against County. City argues it is not necessary for the plaintiff to be adverse to the United States, and that it is enough if two private parties dispute title to property in which the United States has an interest. The Ninth Circuit has rejected that proposition, however. Leisnoi, 170 F.3d at 1191-92; Leisnoi, 267 F.3d at 1023.

Even if the Court were free to ignore this binding authority, the cases upon which City relies do not persuade the Court to do so. In one of the cited cases, the United States was artfully pled as an unnamed third party with which the plaintiff disputed title. See Calf Island Community Trust, Inc. v. Young Men's Christian Assoc. of Greenwich, 263 F. Supp. 2d 400, 401-03 (D. Conn. 2003) (holding plaintiff artfully pled complaint to avoid federal jurisdiction under the Quiet Title Act by referring to unnamed party with whom it had title dispute where unnamed third party was the United States). Thus, the plaintiff in that case was adverse to the United States.

In the other cited case, the parties conceded federal jurisdiction and the district court did not address this issue or provide a persuasive analysis as to why Leisnoi did not control. City of Buckley v. Toman, No. C10-5209 RBL, 2010 WL 3222520, *1 (W.D. Wash. 2010) (slip copy) ("The parties concede that the City of Buckley's claim against the Froemkes raises a federal question and that this court therefore has original jurisdiction over that claim."). Although it is not clear from the cited decision, the Court suspects the parties conceded jurisdiction, and the district court accepted this concession without further analysis, because the United States was a named party defendant in the action, the United States had a conservation easement on one of the properties at issue, and the plaintiff sought a prescriptive easement for a ditch for public drainage and reservoir overflow over the same property. Id. Consequently, it appears from the caption and the recited facts that the plaintiff and the United States were adverse.

1    Leisnoi makes clear that the plaintiff in a Quiet Title Act case must be adverse to
2 the United States for initial subject matter jurisdiction to exist.  The Court may have
3 supplemental jurisdiction over City's declaratory judgment claim against County, but it does
4 not have original jurisdiction over the claim.

### B.  Clean Water Act

This Court has jurisdiction under 28 U.S.C. § 1331 over "all civil actions arising under the Constitution, laws, or treaties of the United States."  A case arises under federal law if the plaintiff's well-pleaded complaint establishes "either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law."  Peabody Coal Co. v. Navajo Nation, 373 F.3d 945, 949 (9th Cir. 2004).

In this action, City asserts a claim for declaratory relief.  In a declaratory relief action, the Court has jurisdiction if the "declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights," and the anticipated suit "would necessarily present a federal question."  Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 19 & n.19 (1983); Standard Ins. Co. v. Saklad, 127 F.3d 1179, 1181 (9th Cir. 1997) (quotation omitted); see also Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1091 (9th Cir. 2002).

The Clean Water Act's regulatory scheme includes the National Pollution Discharge Elimination System ("NPDES") permit program, "which allows certain discharges of pollutants only if in compliance with government-issued permits, and imposes related monitoring and reporting requirements."  Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141, 1145 (9th Cir. 2000) (citing 33 U.S.C. § 1342).  A discharge of pollutants not specifically permitted under an NPDES permit is illegal.  33 U.S.C. § 1311(a).  The Clean Water Act allows any citizen to sue "any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order

issued by the [EPA] Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" includes an NPDES permit. 33 U.S.C. § 1365(f)(6).

The Environmental Protection Agency may approve a State to administer the NPDES permits in that State. 33 U.S.C. § 1342(b). Nevada administers its own NPDES permit program, and statutorily has delegated permitting and enforcement authority to the county level. Nev. Rev. Stat. §§ 244A.455-244A.573. Specifically, the relevant county is authorized to develop an areawide waste management plan, to adopt "all necessary ordinances, regulations and policies to effectuate the adopted areawide waste management plan," and to "police the area to insure compliance with the areawide waste management plan and adopted ordinances, regulations and policies." Id. §§ 244A.571-.573. If the relevant county finds "that the areawide waste management plan or the adopted ordinances, regulations and policies are not being enforced by all local political subdivisions, the county may bring an action in a court of competent jurisdiction to ensure compliance." Id. § 244A.573(3).

Here, County is the declaratory relief defendant. Thus, the Court has original jurisdiction over City's declaratory relief claim if County could have brought a coercive action in federal court under the Clean Water Act or Nevada's related NPDES permitting statutes, and the anticipated suit necessarily would present a federal question.[2] City has failed to meet its burden of establishing County could bring a coercive action under the Clean Water Act. City undisputably has a NPDES permit which contemplates discharge in

---

[2] It is not clear whether federal question jurisdiction exists where a declaratory relief defendant has an election of remedies, and could choose to forego a federal claim altogether. In such a case, it is questionable whether the anticipated suit necessarily raises a federal question where the declaratory relief defendant could opt to ignore its federal remedy. However, the Court need not reach this issue, and so the Court will assume without deciding that if the County could have brought a Clean Water Act claim, federal question jurisdiction exists.

Sloan Channel, and thus County could not bring a suit against City for discharging without a NPDES permit. County has not taken the position that City has exceeded the NPDES permit by discharging into Sloan Channel. Although County has expressed some concern about the quality of the effluent, County never has contended that City has exceeded the NPDES permit, as City acknowledges. (Opp'n to Def. Clark County's Ex Parte Mot. for TRO (Doc. #15) at 22 n.9 ("The County, however, has never alleged an environmental injury. The County cites no violations of environmental laws in their motion or in their answer and counterclaim. Nor can it.").) County also never has suggested that City has failed to enforce the areawide waste management plan.

The present dispute is not whether City's discharge complies with the Clean Water Act. The dispute is whether, despite obtaining an NPDES permit and despite the County approving an areawide waste management plan which contemplates discharge into Sloan Channel as a possible source point, City needs any further approvals from County. Those further approvals are based on County's alleged property rights and zoning laws, not the Clean Water Act.

At bottom, the declaratory relief City seeks is a defense to County's state law trespass and nuisance claims. A federal defense cannot support original federal question subject matter jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 673-74 (1950); Opera Plaza Residential Parcel Homeowners Assoc. v. Hoang, 376 F.3d 831, 840 (9th Cir. 2004) ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, [federal] jurisdiction is lacking." (quotation omitted, second alteration in original)). The Court therefore lacks jurisdiction under the Clean Water Act.

### C.  Property Clause

The Constitution's Property Clause provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or

1 other property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.  Pursuant to
2 the Property Clause, "'Congress exercises the powers both of a proprietor and of a
3 legislature over the public domain,'" and thus can take such actions as "control the
4 occupancy and use of the public lands." State of Nev. v. Watkins, 914 F.2d 1545, 1552-53
5 (9th Cir. 1990) (quoting Kleppe v. New Mexico, 426 U.S. 529, 540 (1976)).

6       City has failed to meet its burden of establishing County could bring a coercive
7 action under the Property Clause.  County claims its own property rights and regulatory
8 authority require City to obtain County's approval to discharge effluent into County's
9 improvements on the Range Wash and Sloan Channel.  City's reliance on the Property
10 Clause is a defense to County's state law nuisance and trespass claims, as City contends it
11 need not comply with local regulations pursuant to the United States' authority to control
12 activities on federal land under the Property Clause.  City's federal defense cannot support
13 original federal question subject matter jurisdiction in this Court.

14       **D.  Supplemental Jurisdiction**

15       Although the Court lacks original subject matter jurisdiction over the City's
16 declaratory relief action against County, the Court may exercise supplemental jurisdiction
17 over the claim.  Pursuant to 28 U.S.C. § 1367(a), where a federal district court has original
18 jurisdiction, the court also has supplemental jurisdiction "over all other claims that are so
19 related to claims in the action within such original jurisdiction that they form part of the
20 same case or controversy under Article III of the United States Constitution."  This
21 supplemental jurisdiction includes claims involving the joinder of additional parties.  28
22 U.S.C. § 1367(a).  "A state law claim is part of the same case or controversy when it shares
23 a common nucleus of operative fact with the federal claims and the state and federal claims
24 would normally be tried together." Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir.
25 2004) (quotation omitted).
26 ///

The court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Should one of these factors be present, the court considers whether continuing to exercise supplemental jurisdiction promotes economy, convenience, fairness, and comity. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997). Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within the federal district court's discretion. Satey v. JPMorgan Chase & Co., 521 F.3d 1087, 1090 (9th Cir. 2008).

The City's claim for declaratory relief against County is sufficiently related to City's claim against the United States under the Quiet Title Action such that they form part of the same case or controversy. City contends the easement granted by the United States under the EUL allows it to discharge effluent into the Range Wash without further approval from County. Thus, the existence and scope of that easement arises out of a common nucleus of operative fact regarding the underlying dispute between City and County.

However, the Court, in its discretion, will decline to exercise supplemental jurisdiction over the City's declaratory judgment claim against County and the County's state law counterclaims. These state law claims substantially predominate over the City's Quiet Title Act claim. Although the Court's resolution of the Quiet Title Act claim may affect the resolution of the state law claims, the overall dispute between City and County primarily concerns state law claims to which City will interpose defenses based on federal law.

Other compelling reasons exist for declining jurisdiction. As set forth in a separate Order in the related action removed from state court (Clark County, Nevada v. City of North Las Vegas, 2:11-CV-01012-PMP-GWF), the Court will remand the County's

16

separately filed action against City which asserts the same state law trespass and nuisance claims. As the state court already will be addressing these claims, the considerations of economy, convenience, and fairness weigh in favor of declining supplemental jurisdiction. Comity also weighs in favor of declining supplemental jurisdiction. The dispute between the City and the County involves two local governmental units over a matter of substantial local concern. The Court, in its discretion, therefore will decline to exercise supplemental jurisdiction over City's declaratory judgment claim against County and County's counterclaims against City.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the Court will exercise jurisdiction in this matter with respect to the declaratory judgment action by Plaintiff City of North Las Vegas and against Defendant United States under the Quiet Title Act.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over City's declaratory judgment action by Plaintiff City of North Las Vegas and against Defendant Clark County, Nevada. The Court also declines to exercise jurisdiction over Defendant Clark County, Nevada's counterclaims against Plaintiff City of North Las Vegas.

IT IS FURTHER ORDERED that Plaintiff City's Request for Jurisdictional Discovery and Evidentiary Hearing (Doc. #54) is hereby DENIED as moot.

IT IS FURTHER ORDERED that County of Clark's Request for Status Conference or a Hearing on Pending Motions Fully Briefed is hereby DENIED as moot.

DATED: August 9, 2011

_____
PHILIP M. PRO
United States District Judge